IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACQUE WHAUMBUSH, | : | CIVIL ACTION |
| Plaintiff, | : | NO.  06-3727 |
| v. | : | |
| CITY OF PHILADELPHIA, and LYNDA ORFANELLI | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S.J.                                                                          October 17, 2007

       Presently before the Court are Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Docket No. 9) and Plaintiff's Response in Opposition (Docket No. 11).  For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED**.

## I. INTRODUCTION

       Plaintiff, Jacque Whaumbush, is an African American male.  Whaumbush alleges that Defendants, the City of Philadelphia and Lynda Orfanelli in her individual and official capacities, disqualified his application for employment with the Philadelphia Sheriff's Office on the basis of his race and in doing so violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (2000) (Counts I and II), the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 955(a) (2007) (Count V), and the Equal Protection Clause of the Fourteenth Amendment of the

U.S. Constitution (Count IV).[1]  Defendants move for summary judgement on each of these claims.

## II.  BACKGROUND

Whaumbush worked for the City of Philadelphia in the Sheriff's Office beginning in 1983.[2]  The Office hired Whaumbush as a Correctional Officer, a role he remained in until 1995, when he became a Deputy Sheriff Officer. (Defs.' Ex. 11.)  In February 2002, Whaumbush was appointed to the position of Chief Deputy Sheriff. (Compl. ¶ 11.)  This was a temporary position. (Id.)  Plaintiff's personnel records do not reflect the fact that he held this position, nor do they show that he was paid a higher salary upon being appointed Chief Deputy Sheriff. (See Defs.' Ex. 11.)  Nonetheless, Whaumbush's responsibilities increased.  According to the Sheriff's Office Duty Manual, the Chief Deputy is "second in command." (Defs.' Ex. 10, at 4.)  In this role, Whaumbush reported directly to the Sheriff, John D. Green; he supervised six captains, four lieutenants, ten sergeants, and 250 deputy sheriff officers. (Compl. ¶ 13.)

In April 2005, a position opened for Deputy Sheriff Captain.  While this position was below Chief Deputy within the Office's hierarchy (See Defs.' Ex. 10, at 2), Whaumbush applied because it was a permanent position. (Compl. ¶ 17.)  The application is dated April 27, 2005. (Defs.' Ex. 6.)

When the Sheriff's Office fills a civil service position, it must proceed through the city's Personnel Office.  The Personnel Office first makes an announcement about the job, which

---

1. In his complaint, Whaumbush also claimed that Defendants violated his First Amendment rights.  This claim was dismissed by a Stipulation and Order. (Docket No. 6.)

2. Whaumbush did not work for the city during a two-year period sometime between 1987 and 1990 because he was involved in a labor dispute with the city.  The dispute was resolved when the city offered him his job back. (Whaumbush Dep. 6-7.)

lists the job's specifications. The applications are reviewed by a team within the Personnel Office, and those applicants who do not meet the specifications are disqualified. Once the applicant list has been trimmed, the Personnel Office sometimes administers an exam to those who qualified. The Personnel Office ranks the qualified applicants, and from there, the Sheriff's office may interview the candidates and make a decision. (Orfanelli Dep. 8-12.)

In this case, Mark O'Connor supervised the process. O'Connor is a Hiring Services Manager within the Personnel Office. (O'Connor Dep. 5.) Under his direction, the following job specification was prepared for the position of Deputy Sheriff Captain:

> REQUIREMENTS
> 1. Presently a City employee in any class in the Sheriff's Office with permanent civil service status and a performance rating of satisfactory or higher; and
> 2. Education equivalent to the completion of the twelfth school grade; and
> 3. Five years of experience in court security and/or enforcement work, one year of which has been at the second supervisory level[3]

(Defs.' Ex. 5.) After Whaumbush applied for the job, O'Connor's team determined on June 7, 2005 that Whaumbush was not qualified because he had "[i]nsufficient experience of the kind required." (Defs.' Ex. 7.) In particular, Whaumbush was said to lack the "one year which has been at the second supervisory level." (Defs.' Ex. 9.) Six people applied for the Deputy Sheriff Captain position. Two were African American, including Whaumbush, and four were white. Of the six, four were disqualified because they did not meet the job's requirements: Whaumbush, the other African American applicant, and two of the four white applicants. O'Connor's team

---

3. There is some dispute about whether the requirements submitted as Defendants' Exhibit 5 are exactly the same as the job announcement Whaumbush saw. (See Whaumbush Dep. 11-13.) However, there is no dispute as to the only portion that is relevant for our current purposes, that there was a requirement of at least one year of experience at the "second supervisory level."

disqualified all four because each lacked experience at the second supervisory level.[4] (O'Connor 19-21; see Defs.' Ex. 15.)

O'Connor claims that he did not know Whaumbush personally and did not know his race. (O'Connor Dep. 8:4.) There is no mention of Whaumbush's race in the documents O'Connor says were used to determine if Whaumbush was qualified. (O'Connor Dep. 23.) Whaumbush admits that O'Connor did not know him personally (Whaumbush Dep. 17-19), and he has produced no specific evidence that O'Connor knew his race.

In a letter from Whaumbush dated July 6, 2005, Whaumbush requested an explanation of the Personnel Office's finding, since, as he saw it, the duties and supervisory level of Chief Deputy, his current position, "far exceed[ed] that of captain," the position he was applying for. (Defs.' Ex. 8.) Lynda Orfanelli, who at the time was the Personnel Director for the City of Philadelphia, informed Whaumbush in a letter of reply that his civil service designation and pay scale were listed as Deputy Sheriff, and therefore he lacked experience at the required second supervisory level. (Defs. Ex. 9.) According to both Orfanelli and O'Connor, in order to qualify as having a certain level of experience when applying for a civil service position, that experience must be within the civil service system with a corresponding pay grade. (Orfanelli Dep. 16-18; O'Connor Dep. 23:1-4.) As Orfanelli described it, there are two kinds of positions in the Sheriff's Office and throughout the city. There are civil service positions and appointed positions. No matter how high a person climbs through appointed positions, such positions are

---

4. One white candidate who was disqualified had just less than one year of experience as Deputy Sheriff Lieutenant. (Defs.' Ex. 15.) While Deputy Lieutenant qualified at the second supervisory level, he had not held that position for a long enough period. (O'Connor 20-21.) The other African American candidate, like Whaumbush, was only identified as having experience as Deputy Sheriff Officer. (Defs.' Ex. 15.) The last rejected candidate was an Administrative Technician and therefore had no experience at the second supervisory level. (Id.)

not recognized on the civil service side. (Orfanelli Dep. 17; 26.) Whaumbush admits that his position as Chief Deputy was an appointed position. (Whaumbush Dep. 18:22-19:7.) All of the personnel forms produced for the Court, and said to be the basis for the City's determination, indicate only that Whaumbush was a Deputy Sheriff Officer (see Defs.' Ex. 11), which indisputably does not qualify at the second supervisory level.

Like O'Connor, Orfanelli claims not to have known Whaumbush or his race. (Orfanelli Dep. 37:5.) There were no in-person interactions between Whaumbush and anyone in the Personnel Office throughout the application process. (Whaumbush Dep. 17-19.) Whaumbush's only explanation of how either O'Connor or Orfanelli knew him is that because he held a prominent position, they must have known who he was and that he was African American. (See Pl.'s Br. 3.)

### III. SUMMARY JUDGEMENT STANDARD OF REVIEW

A motion for summary judgment will be granted where all of the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Because a grant of summary judgment will deny a party its chance in court, all inferences must be drawn in the light most favorable to the party opposing the motion. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The ultimate question in determining whether a motion for summary judgment should be granted is "whether reasonable minds may differ as to the verdict." Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 129 (3d Cir. 1998). "Only disputes over facts that might

affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

After the moving party satisfies its burden, the nonmoving party "must present affirmative evidence to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 256-57.  Rule 56 of the Federal Rules of Civil Procedure requires the entry of summary judgment, after adequate time for discovery, where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986).  "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. at 323.  Where, as here, the burden of proof is on the nonmoving party, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

**IV. DISCUSSION**

All of the claims here are governed by the three-step burden-shifting framework developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[5]  Under the McDonnell

---

5.   While the McDonnell Douglas test was developed in the context of Title VII claims,  subsequent cases have applied the same analysis to discrimination claims brought under the Pennsylvania Human Relations Act, see Weston v. Pennsylvania, 251 F.3d 420, 426 n.3 (3d Cir. 2001), and § 1983. See Foxworth v. Pa. State Police, 402 F. Supp. 2d 523, 531 (E.D. Pa. 2005) ("[S]ubsequent caselaw has established that this same burden-shifting approach used in Title VII claims is also applied when analyzing . . . employment-related equal protection claims under 42 U.S.C. § 1983. . . .  Consequently, all of [Plaintiff's] race discrimination claims are to be analyzed using the same analysis." (citations omitted)); see also St. Mary Honor Ctr. v. Hicks, 509 U.S. 502, 506 n.1 (1993) (assuming Title VII burden-shifting framework applies to § 1983 claims); Morrissey v. Luzerne County Community Coll., 117 Fed. Appx. 809, 814 (3d Cir.2004); Stewart v. Rutgers, 120 F.3d 426, 432 (3d Cir.1997).

Douglas model, the plaintiff must establish a prima facie case to withstand a motion for summary judgement. To establish a prima facie case of employment discrimination, the plaintiff must show by a preponderance of the evidence that "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position." Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (citing McDonnell Douglas, 411 U.S. at 802). Whether the plaintiff has established a prima facie case is a question of law for the court to decide. Id.

If the plaintiff successfully establishes a prima facie case, the burden shifts to the defendant, who must produce evidence sufficient to support a finding that there was a legitimate, nondiscriminatory reason for the employment action. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993). Summary judgment should be granted for the plaintiff if the defendant is unable to satisfy this burden. Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997).

If the defendant does satisfy this burden, the burden shifts back to the plaintiff to show that the employer's proffered reason for its decision is pretextual. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). To show pretext, "the plaintiff must submit[] evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 762

### A. Prima Facie Case of Discrimination

Defendant argues that Whaumbush has not met his initial burden of presenting a prima facie case of discrimination. While there is no dispute that Whaumbush is a member of a protected class and that he suffered an adverse employment action, Defendant argues that Whaumbush was not qualified for the position, and even if he was, that he has failed to put forth any facts that raise an inference of discriminatory action. (Defs.' Mem. 8-11.)

#### 1. Whaumbush's Qualifications for the Position

The dispute over Whaumbush's qualifications centers around one job requirement: one year of experience at the second supervisory level. The job specification itself does not explain the meaning of this requirement. Additionally, the City has failed to point to any official guideline that explains the technical meaning of "second supervisory level." Both Orfanelli and O'Connor explained that when an opening in the Civil service system requires prior experience, the prior position must be a recognized civil service position. However, the Court is not entirely convinced on this point. In the official job description for Deputy Sheriff Lieutenant, within the subsection titled "MINIMUM ACCEPTABLE . . . EXPERIENCE," there is the following requirement: "four years of experience . . . , one year of which has been at the first supervisory level. Or any equivalent combination of acceptable education and experience." (Defs.' Ex 17.) While Deputy Lieutenant is not the job Whaumbush applied for, this seems to indicate generally that there may be some flexibility when determining if a candidate has the required supervisory experience.[6]

---

6.  The Court notes that the record does not include an official job description for Deputy Sheriff Captain of the kind submitted as Defendants' Exhibit 17 for Deputy Sheriff Lieutenant.

It is undisputed that Chief Deputy Sheriff was not a position recognized within the civil service system. Instead, Whaumbush's civil service position and corresponding pay grade were as Deputy Sheriff Officer. It is also clear that Whaumbush was Chief Deputy, and as such, he supervised Deputy Captains, Deputy Lieutenants, as well as other Deputy Sheriffs. He had a very high supervisory level, and one might wonder how Whaumbush could be unqualified, while those he supervised were qualified. As this is a motion for summary judgement and all inferences must be drawn in favor of the non-movant, the Court finds that there is a triable question as to whether Whaumbush was qualified to be Deputy Sheriff Captain.

### 2. Inference of Discriminatory Action

Even assuming that Whaumbush was qualified for the position of Deputy Sheriff Captain, the Court concludes that Whaumbush has not established a prima facie case because Whaumbush has failed to set forth any circumstances that raise an inference of discriminatory action. To meet this element of the prima facie case, the evidence "must establish some causal nexus between [Plaintiff's] membership in a protected class and the [adverse employment action]." Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003).

The only evidence of discrimination put forth by Whaumbush is that he is African American and white applicants were chosen for the position. It is true that in the Third Circuit it is sufficient to establish a prima facie case in the context of removed employees simply by showing that the removed employee was replaced by someone outside the protected class. See Johnson v. Keebler-Sunshine Biscuits, Inc., 214 Fed. Appx. 239, 242 (3d Cir. 2007). Here, however, not only was plaintiff disqualified, but three other applicants, one of whom was white, were disqualified for the same reason. Additionally, the white candidates deemed qualified,

9

unlike Whaumbush, had more than one year of service as Deputy Lieutenant, which was a civil service position and, according to Orfanelli and O'Connor, qualified at the second supervisory level.  While it could be argued that the decision made by the Personnel Office was mistaken, there is no reasonable inference of discriminatory action when the Personnel Office applied the same mechanical formula to white and African American candidates alike.  Indeed, because the decision to disqualify Whaumbush appears to be based on objective criteria not involving race, there is no reasonable inference to be drawn of discrimination. See West v. Hudson County Corr. Ctr., 231 Fed. Appx. 136, 137 (3d Cir. 2007) ("Given the objective criterion used by defendant in awarding promotions, . . . [Plaintiff] failed to raise an inference of discrimination with respect to the issue of promotion.").

Whaumbush also has failed to put forth evidence that anyone in the Personnel Office was aware of Whaumbush's race.  Both O'Connor and Orfanelli assert that they did not even know Whaumbush's race while determining if he was qualified.   All communications with Whaumbush were either in writing or by phone.  Whaumbush's only argument is that Orfanelli and O'Connor must have known his race because he held such a prominent position.  There is no specific evidence on record that officers in the Personnel Office would know Whaumbush. Neither O'Connor nor Orfanelli were employed in the Sheriff's Office, and there is no evidence that would suggest that every employee of the City of Philadelphia would know the Chief Deputy Sheriff's race. See Sarullo, 352 F.3d at 799 (concluding in an age-discrimination case that there was no reasonable inference of discrimination where plaintiff's only evidence the decision makers even knew plaintiff's age was that they must have heard it through the office "grapevine").

Finally, Whaumbush has not put forth any evidence suggesting racial animus on the part of O'Connor, Orfanelli, or anyone else involved in deciding whether he was qualified for the Deputy Sheriff Captain position.

For all these reasons, the Court concludes that Whaumbush has failed to make a prima facie case of discrimination.

**B. Overcoming Defendants' Legitimate, Nondiscriminatory Explanation**

Even assuming that Whaumbush could establish a prima facie case, it is clear that the City can proffer a legitimate, nondiscriminatory reason for its action, shifting the burden back to Whaumbush. As discussed above, in order to survive summary judgement Whaumbush must submit evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir.1994).

The Third Circuit has explained,

> To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent. Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence.

Id. at 765. It is not enough, therefore, for Whaumbush to argue that the Personnel Office was incorrect, misapplied its rules, or was unfair. "[F]ederal courts are not arbitral boards ruling on the strength of 'cause' for discharge. The question is not whether the employer made the best, or

11

even a sound, business decision; it is whether the real reason is [discrimination]." Keller, 130 F.3d at 1109 (quoting Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir. 1996)).

Additionally, Whaumbush has not put forth facts that could lead a reasonable jury to believe that an invidious discrimination was more likely than not a motivating factor.  As discussed at length above, Whaumbush has not shown that any of the decision makers even knew Whaumbush's race.  Nor has Whaumbush shown any evidence of racial animus on the part of the decision makers.  Therefore, the Court must dismiss all of Whaumbush's claims, even assuming that Plaintiff has established a prima facie case.

**IV.  CONCLUSION**

For the reasons stated above, the Court grants Defendants' Motion for Summary Judgement.  An Order consistent with this Memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACQUE WHAUMBUSH, : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION NO. 06-3727 |
| v. : | |
| : | |
| CITY OF PHILADELPHIA, and : | |
| LYNDA ORFANELLI : | |
| : | |
| Defendants. : | |

## ORDER

AND NOW, this 17th day of October, 2007, upon consideration of Defendant's Motion for Summary Judgment (Docket No. 9) and Plaintiff's Brief in Opposition (Docket No. 11), it is hereby **ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**. Judgment is entered in favor of Defendants City of Philadelphia and Lynda Orfanelli and against Plaintiff Jacque Whaumbush.

This case is **CLOSED** .

BY THE COURT:

*s/ Ronald L. Buckwalter, S. J.*
RONALD L. BUCKWALTER, S.J.